(Reap. Dec. 8621)

THE LADISH CO. *v.* UNITED STATES

Entry Nos. 1105; 1154.

(Decided July 6, 1956)

*Doyle, Lewis & Warner* (*Benjamin F. Marsh* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Daniel I. Auster*, trial attorneys), for the defendant.

WILSON, Judge: The involved merchandise consists of two shipments of steel billets exported from Antwerp, Belgium, and entered at the port of Milwaukee, Wis. The two shipments in question are from a total of 42 importations of steel billets shipped by the same exporter to the United States, all of which were ultimately consigned to the plaintiff herein. Twenty-five of these shipments were entered at the port of Toledo, and entry of the remaining 17 was made at Milwaukee.

The two shipments under consideration were invoiced at United States $132 or $134 per 1,000 kilos, less certain charges. Both importations were appraised at United States $155 per 1,000 kilos, net, less nondutiable charges.

The record would indicate that there was no foreign, export, or United States value for the merchandise and that appraisement was

made on the basis of cost of production, section 402 (f) of the Tariff Act of 1930 (R. 8).

Section 402 (f) of the Tariff Act of 1930 provides:

COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It appears that appraisement of the merchandise covered by the other 15 of the entries made at the port of Milwaukee was made on the basis of the entered values therein, as representative of the cost of production of the merchandise there involved. However, in the case of the merchandise covered by the two entries here under consideration, the appraiser advanced the values. All of the appraisements were made on the basis of cost of production (section 402 (f) of the Tariff Act of 1930). Plaintiff herein claims that the entered values of the merchandise in question represent such cost of production.

Counsel for the plaintiff in their brief (page 4) maintain:

* * * if the same cost of production figures * * * had been applied to all Seventeen (17) entries, as they should have been, there would have been an excess refund due and owing to the Plaintiff in an amount of approximately Four Hundred Fifty Dollars ($450.00).

and, on behalf of the plaintiff, it is argued that "the only fair thing would be to apply to the two entries here the same thing they did with the other 15 entries; in other words, put them through on the basis of the entered value being the appraised value." (R. 6.)

Respecting the cost of production of merchandise such as that under consideration, the record discloses the following testimony of plaintiff's witness:

THE WITNESS: I can give you the cost of production as given to me as applicable to shipments leaving Europe during November and December, 1951, and January. 1952, which cover these two cases. The cost of production was Belgium francs 5,892.50 per thousand kilograms for a four-inch billet. A three-inch billet would be that figure plus 50 francs. A two-inch billet would be that figure plus 100 francs. Thus you get the values for the various sizes.

JUDGE WILSON: Were those figures furnished to you by the Appraiser at Toledo?

THE WITNESS: That is correct. That is the note I made there. (R. 15.)

The appraiser of merchandise at the port of Milwaukee testified that he appraised the merchandise here in question "on the basis of cost of production" (R. 17), which resulted in an advance from the entered value; that the reason for his advance of value was that the price of steel fluctuated considerably, there being a great shortage of material. The witness stated that the "cost of production couldn't be extended over any period," and that, in lieu of taking the cost of production, the invoice value of the merchandise was taken as the proper value in cases where the invoice value as represented was higher than the cost of production. He then testified that, on or about the date of exportation of the merchandise here in question, there were two shipments involving the same merchandise from the same exporter to the same importer, in which one shipment was invoiced at $155 for one thousand kilos, and the other shipment was invoiced at $132 for one thousand kilos, and stated that he appraised the merchandise here in question on the basis of the higher cost of production, as represented in the shipment invoiced at $155 (R. 18).

On cross-examination, defendant's witness testified that, at the time he appraised the merchandise here in question, he knew of certain cost-of-production figures for steel billets for the period November and December 1951 and January 1952, as disclosed by a foreign investigation, initiated at the request of the Bureau of Customs (R. 22), but then stated:

It may be I knew of the cost of production prices, but the prices were not stable in any particular period. (R. 23.)

The record further discloses the following:

JUDGE WILSON: Did you use those figures in arriving at your valuation?

THE WITNESS: No.

JUDGE WILSON: Although they were cost of production figures which you had in your file, you didn't use them, but the invoice value?

THE WITNESS: They were so temporary, we couldn't follow them.

* * * * * * *

R. Q. Why didn't you use those figures?—A. Because I have to appraise prior to the date of exportation.

R. Q. And in your opinion, based upon your experience, and your qualifications as an appraiser, did you feel that those figures did not properly represent

the cost of production at the time of exportation of the merchandise before you?—A. That is absolutely correct.

R. Q. Is that the reason you didn't use the figures?—A. Right. (R. 25.)

Section 2633, 28 U. S. C., provides as follows:

The value found by the appraiser shall be presumed to be the value of the merchandise. The burden shall rest upon the party who challenges its correctness to prove otherwise.

It is incumbent upon a plaintiff in a reappraisement case to establish (1) that the appraisement is erroneous and (2) some other correct value for the merchandise. *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, 89, C. A. D. 502; *G. & H. Transport Co., Inc. (Philipp Wirth* v. *United States*, 27 C. C. P. A. (Customs) 159, C. A. D. 78.

The statutory presumption of correctness attaches separately to each value found by the appraiser. The findings of the appraiser at the port of Toledo, with respect to the 25 entries made at that port, and the findings of the appraiser at the port of Milwaukee on the 15 entries made at that port have no bearing upon, and constitute no evidence which would affect, the presumption of correctness of the values reported by the appraiser with respect to the merchandise covered by the two entries under consideration here. It would be an error, in my opinion, to consider that the report, heretofore referred to, which was before the appraiser at the time of appraisement and which was considered, but rejected by him, would be sufficient in itself to affect the presumption of correctness of his appraisement, even if said report had been introduced into evidence. It appears that the appraiser in this case had information of a value on another shipment involving merchandise of like character, shipped from the same exporter to the same importer herein at or about the time of exportation of the two shipments here in question, which value was equal to the appraised value of the imported merchandise in each case. There is no substantial evidence in this record to controvert the values at which appraisement was made.

It is not controlling of the issue here that the importer, in entering its merchandise, relied upon cost-of-production figures furnished by Government officials. It is no part of the official duty of the appraiser to supply information as to the value of merchandise, and information so given is in no way binding on customs officials, nor can such information be relied upon to obviate the duty of the importer to ascertain and enter merchandise at its true value. *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, 32, C. A. D. 392; *Mitsubishi Shoji Kaisha (Ltd.)* v. *United States*, 19 C. C. P. A. (Customs) 91, T. D. 45227.

The issue here is what is the value of the merchandise. In the case at bar, the plaintiff has the burden of overcoming the presumptively

correct values, and this the plaintiff has failed to do. I, therefore, find the proper values for the merchandise in question to be the presumptively correct values found by the appraiser. Judgment will be entered accordingly.